

**ORDERED in the Southern District of Florida on November 14, 2016.**

**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:                                                      Case No. 15-24931-EPK

DAYA MEDICALS, INC.,                        Chapter 11

     Debtor.
_____/

**MEMORANDUM OPINION AND ORDER**

THIS MATTER came before the Court for evidentiary hearings on July 25, 2016, August 5, 2016, and September 2, 2016[1] upon the *Debtor's Emergency Motion for Violation of Automatic Stay and Creditor Misconduct Against DKMC, Inc., Dana Klein, Eric Stanco, Esq. and Scott D. Smiley, Esq.* [ECF No. 87] (the "Motion") filed by Daya Medicals, Inc. (the "Debtor"). In the Motion, the Debtor alleges that Scott D Smiley, Esq., a state court receiver

---

[1] This is a matter that the Court typically would rule on orally, at the close of the evidentiary hearing. However, in light of the fact that the evidentiary hearing took place over three non-consecutive days spanning more than a month, necessitated by the Debtor's extended presentation, the Court was unable to rule without substantial post-hearing time devoted to review of the evidence and argument.

appointed at the request of Eric Stanco, Esq. and Mr. Stanco's clients, Dana Klein and DKMC, Inc., attempted to have certain intellectual property, arguably the primary assets of the Debtor's estate, assigned to Mr. Smiley without this Court's approval and in violation of the automatic stay imposed by 11 U.S.C. § 362. ECF No. 87. The Debtor further alleges that Mr. Stanco, on behalf of his clients Dana Klein and DKMC, Inc., sent two emails also in an attempt to have the intellectual property assigned to Mr. Smiley, as receiver, without this Court's approval and in violation of the automatic stay. *Id.* The Debtor requests injunctive relief and monetary relief in the form of damages and attorneys' fees and costs.[2] *Id.*

The Court considered the Motion, the *Receiver's Response to Debtor's Emergency Motion for Violation of Automatic Stay and Creditor Misconduct and Receiver's Cross-Motion for Fees* [ECF No. 105] and *Receiver's Amended Response to Debtor's Emergency Motion for Violation of Automatic Stay and Creditor Misconduct and Receiver's Cross-Motion for Fees* [ECF No. 133] (the "Amended Response") filed by Scott D. Smiley, Esq., the evidence admitted at the hearings on the Motion, and the presentations of counsel.

## SUMMARY OF RULING

As discussed more fully below, the Court concludes that all of the intellectual property at issue in this matter is, and for some time has been, the property of the Debtor. Thus, any attempt to obtain control over such intellectual property after the commencement of this bankruptcy case constitutes a violation of the automatic stay. Even if all that was requested after the petition date was that the Debtor's principals execute formal assignments of whatever right they might have in any of such intellectual property, that effort, coupled with continued claims that all such intellectual property was not in fact owned by the Debtor, had

---

[2] In the Motion, the Debtor requested punitive damages. The Debtor withdrew this request on the record at the hearing on September 2, 2016.

a negative impact on the Debtor's property rights and such attempts constitute violations of the automatic stay.

The two emails by Mr. Stanco, pointed to by the Debtor, are not willful attempts to violate the automatic stay. There is no evidence that Mr. Stanco knew of the Debtor's bankruptcy case at the time of the first email, and the second email amounts to a legal discussion among counsel with regard to the extent of the automatic stay.

On the other hand, Mr. Smiley's repeated efforts to obtain assignment of the Debtor's intellectual property to himself, as receiver, even based on a mistaken belief that it was owned by the Debtor's principals, represented a concerted effort to obtain control of property of the estate without first seeking relief from stay from this Court. Mr. Smiley knew of the pendency of this case, knew that the Debtor claimed ownership in the intellectual property, and nonetheless sought to have the Debtor's principals execute personal assignments of such intellectual property in the apparent belief that this would provide him, as receiver, with control of those assets. Mr. Smiley should first have brought the issue before this Court, asking this Court to rule whether the intellectual property was part of the estate and, only if this Court determined that the intellectual property was indeed owned by the Debtor's principals and thus not protected by the stay, then sought assignments from the individuals. Mr. Smiley's intentional acts constitute willful violations of the automatic stay under prevailing law.

The Debtor sought an award of damages, representing the cost of delay in the Debtor's efforts to monetize the intellectual property. However, because this Court has delayed approval of the Debtor's proposed licensing agreement to the confirmation hearing in this case, even if Mr. Smiley's actions created friction for the Debtor his actions are not the actual cause of the Debtor's present inability to finalize its licensing and related arrangements. Nevertheless, the Debtor is entitled to an award of legal fees and costs incurred by the estate

in rebuffing Mr. Smiley's inappropriate efforts to obtain control over the Debtor's intellectual property prior to filing the Motion, in preparation and filing of the Motion, and in connection with the various hearings on the Motion. The Court will order Mr. Smiley to pay to the estate a sum equal to the reasonable legal fees and expenses incurred by the estate on these matters.

## APPLICABLE LAW

Section 362(a)(3) of the Bankruptcy Code provides that "a petition filed under . . . this title . . . operates as a stay, applicable to all entities, of any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). "[T]he stay applies to attempts to obtain control over tangible and intangible property . . . ." *Henkel v. Lickman (In re Lickman)*, 297 B.R. 162, 188 (Bankr. M.D. Fla. 2003) (internal quotation omitted).

By its explicit terms, the automatic stay applies to property of the estate in a bankruptcy case, as determined under section 541(a). But a dispute as to a debtor's property rights does not obviate the effect of the automatic stay. To the contrary, where it is unclear whether a debtor in bankruptcy has an interest in property, parties must act with caution. *See In re Johnson*, 548 B.R. 770, 786-87 (Bankr. S.D. Ohio 2016) ("The purpose of the automatic stay is not to . . . ultimately prevent the exercise of the available rights of any party . . . [but instead is] to prevent any creditor from becoming a self-determined arbiter of what constitutes property of the estate and what actions are permitted or prohibited by the stay."). Even where an action does not directly affect property of the estate, it is prohibited by the automatic stay if it has an adverse impact on property of the estate. *See id*. at 790 (citing *Amedisys, Inc. v. Nat'l Century Fin. Enters. (In re Nat'l Century Fin. Enters.)*, 423 F.3d 567, 578 (6th Cir. Ohio 2005)); *In re Prudential Lines, Inc.*, 928 F.2d 565, 574 (2d Cir. 1991) ("If [the creditor] were permitted to take a worthless stock deduction . . . it would have an adverse

impact on [the debtor's] ability to carryforward its [net operating loss]. Accordingly, despite the fact that [the creditor's] action is not directed specifically at [the debtor], it is barred by the automatic stay as an attempt to exercise control over property of the estate."); *Klarchek Family Trust v. Costello (In re Klarchek)*, 508 B.R. 386, 397 (Bankr. N.D. Ill. 2014) ("[G]iven the potential adverse impact on property of the estate of the action, the action must be stayed pursuant to section 362(a)(3)."). "Section 362(a)(3) . . . reaches farther [than other provisions in § 362], encompassing every effort to exercise control over property of the estate" *In re Klarchek*, 508 B.R. at 396 (internal quotation omitted).

If the Court finds a willful violation of the stay, the violator may be subject to appropriate sanctions, including damages, an award of attorney's fees and costs, and injunctive relief. *Jove Eng'g v. IRS*, 92 F.3d 1539, 1554, 1559 (11th Cir. 1996). To establish a willful violation of the automatic stay, the movant bears the burden of showing by a preponderance of the evidence that: (1) a bankruptcy petition was filed; (2) the violator received notice of the petition; and (3) the violator's actions were in willful violation of the automatic stay. *See In re Lickman*, 297 B.R. at 190 (citing *In re Flack*, 239 B.R. 155, 163 (Bankr. S.D. Ohio 1999)). A violation is willful if the violator knew of the bankruptcy case and intentionally committed the violative act; it does not matter whether the violator specifically intended to violate the stay. *Jove Eng'g*, 92 F.3d at 1555; *Fleet Mortg. Group v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999) ("A willful violation does not require a specific intent to violate the automatic stay."); *Foust v. Seal (In re Foust)*, 2000 Bankr. LEXIS 1146 at **12, 22-23 (Bankr. S.D. Miss. 2000) ("[A] proper understanding of the Bankruptcy Code or a specific intent to violate the automatic stay is not [required for conduct to be considered willful.]"); *In re Xavier's of Beville*, 172 B.R. 667, 671 (Bankr. M.D. Fla. 1994) ("A violation of the automatic stay is willful if the action is done deliberately; no specific intent to violate a

court order is necessary."); *In re Lile*, 103 B.R. 830, 837 (Bankr. S.D. Tex. 1989) ("Knowledge of the bankruptcy filing has been held to be the legal equivalent of knowledge of the automatic stay.").

A good faith belief in a right to property is not relevant to the Court's determination of whether a violation of the stay was willful. *Kaneb*, 196 F.3d at 268-69 (citing *Tsafaroff v. Taylor (In re Taylor)*, 884 F.2d 478, 483 (9th Cir. 1989)); *Pratt v. GMAC (In re Pratt),* 462 F.3d 14, 21 (1st Cir. 2006) ("[*Kaneb*] rejected the proposition that a stay violation could not be actionable (*viz.*, 'willful') if the creditor had made a good faith mistake[.]"); *IRS v. Murphy*, 2016 U.S. Dist. LEXIS 120401 at *24 (D. Me. 2016) (citing *Kaneb*); *see Gordon v. White (In re Morgenstern)*, 542 B.R. 650, 660 (Bankr. D.N.H. 2015) (finding a willful violation of the automatic stay when the defendant conceded her actions were intentional yet thought they were permissible); *Radcliffe v. Int'l Painters & Allied Trades Indus. Pension Fund (In re Radcliffe)*, 390 B.R. 881, 892 (N.D. Ind. 2008); *In re Flack*, 239 B.R. at 162 ("To establish a willful violation, it must be shown that the party knew of the bankruptcy filing and then took some action, without regard to whether the party had specific intent to violate the stay or acted in good faith based upon a mistake of law or a legal dispute regarding its rights.").

## BACKGROUND AND ANALYSIS

On August 7, 2015, as a result of the request of Mr. Stanco and his clients, Dana Klein and DKMC, Inc., the Broward County Circuit Court entered an Order Appointing Receiver (the "Receivership Order") over the assets of the Debtor, including intellectual property, and also over intellectual property owned by the Debtor's sole officers and directors, Mr. Justin Daya and Dr. Kantilal Daya (together, the "Principals"). Smiley Exh 1. By its own terms, the Receivership Order did not become effective until August 24, 2015, and provided that "a Receiver will be named by separate order, effective August 24, 2015, over the assets of [the

Debtor] . . . ." *Id.* The Receivership Order granted the receiver "the power and duty to take custody and possession of the assets of [the Debtor] . . . ." *Id.* In addition, the Receivership Order provided that "should any party fail or refuse to comply with the terms and requirements of this Order, the Court shall treat such failure or refusal as a direct violation of this Order, subjecting such party to contempt of court proceedings." *Id.*

On August 18, 2015, between entry of the Receivership Order and its effective date, the Debtor filed with this Court a voluntary petition for relief under chapter 11 of Title 11 of the United States Code. ECF No. 1. On that same day, the Debtor filed a suggestion of bankruptcy in the state court case. Pl's Exh 18. There was no evidence presented to suggest that the filing of the suggestion of bankruptcy in the state court case resulted in actual notice to Mr. Stanco or Mr. Smiley of the filing of this bankruptcy case.

Five days after the filing of the bankruptcy petition, on August 23, 2015, Mr. Stanco sent an email to the Principals requesting that the Principals assign to Mr. Smiley, apparently in their personal capacity, various intellectual property. Pl's Exh 16. As the Court confirms below, all such intellectual property was and remains property of the Debtor. However, in spite of the filing of a suggestion of bankruptcy in the state court action, there is no evidence that Mr. Stanco had actual knowledge of the Debtor's bankruptcy case on August 23, 2015.

The following day, August 24, 2015, Mr. Smiley sent a similar email to the Principals informing them of his appointment as receiver by the state court and stating that Mr. Smiley is to "receive the assets of [the Debtor]." Pl's Exh 17. In his April 24th email, Mr. Smiley did not specifically request assignment of the Debtor's intellectual property; rather, Mr. Smiley requested to have an in-person meeting with the Principals in order to discuss potential resolution of the state court matter. *Id.* There is no evidence that Mr. Smiley had actual notice of this bankruptcy case on August 24, 2015.

On August 25, 2015, Michael D. Moccia, Esq., counsel for the Debtor, sent an email to Mr. Smiley specifically referencing the Debtor's bankruptcy filing and the effect of the automatic stay, and explaining that the Debtor owns all of the intellectual property covered by the Receivership Order.  Mr. Moccia directed Mr. Smiley to a May 28, 2004 corporate resolution by which the Principals assigned all of their interest in the subject intellectual property to the Debtor (the "2004 Assignment"). Pl's Exh 18.  Thus, on August 25, 2015, Mr. Smiley had actual notice of the Debtor's bankruptcy case as well as notice that the Debtor considered all of the intellectual property addressed in the Receivership Order to be its property and thus property of the estate in this case.  Mr. Smiley conceded as much during the hearings on the Motion.

On August 28, 2015, counsel for the Debtor filed with the state court proof of the Debtor's ownership of all relevant intellectual property, including a copy of the 2004 Assignment and an affidavit of Justin Daya stating that all of the intellectual property subject to the Receivership Order is owned by the Debtor. Pl's Exh. 19.

On October 8, 2015, Mr. Smiley sent an email to Mr. Stanco with a draft copy of a letter Mr. Smiley intended to send to the Principals, requesting execution of forms of assignment of intellectual property by the Principals personally, and attaching draft assignments with signature blocks for the Principals in their individual capacities. Smiley Exh. 3.  The draft letter to the Principals did not explicitly seek execution of an assignment agreement by the Debtor; the email to Mr. Stanco did not include a draft assignment with a signature block for the Debtor. *Id.*

On February 8, 2016, Mr. Smiley sent a certified letter to the Principals directing them to "execute, notarize, and return to [Mr. Smiley] the attached assignments." Pl's Exh 21.  The form of letter was substantially the same as the draft Mr. Smiley had provided to Mr. Stanco in his October 8, 2015 email.  However, the letter actually sent to the Principals

included three separate assignment documents, two to be executed on behalf of the Principals in their individual capacities, plus a form of agreement to be executed by the Debtor. *Id.* In his letter, Mr. Smiley warned that failure to comply with the assignment request by February 19, 2016 would result in Mr. Smiley filing a motion to compel with the state court. *Id.*

On March 8, 2016, Mr. Smiley sent an email to Mr. Moccia again requesting assignment of the intellectual property from the Principals, in their individual capacities. Pl's Exh 22. Mr. Smiley again warned of the possible filing of a motion for contempt in state court. *Id.* Mr. Moccia responded the same day, explaining that any execution of the proposed assignments by the Principals individually would violate the automatic stay. *Id.* Mr. Moccia warned that requesting such assignments from the Principals, and the filing of a motion for contempt with the state court, would constitute violations of the automatic stay, subjecting Mr. Smiley to sanctions. *Id.* Specifically, Mr. Moccia stated:

> [Y]our communications attempting to get my clients to execute these assignments is a clear violation of the bankruptcy stay and you are subjecting yourself to sanctions in making these communications. While I do not believe that you are intentionally violating the bankruptcy stay, any further attempt to get my clients to sign these assignments will be met with a stay violation motion against you. Additionally, making a motion in state court for judicial execution of the assignments will also be met with a stay violation motion.

*Id.* On the same date, counsel for the Assistant United States Trustee weighed in on the email chain and informed the parties that "[t]he automatic stay is in effect as of petition date. The receiver needs a court order from bankruptcy court in order to do anything." *Id.* The next day, March 9, 2016, Mr. Stanco joined the conversation, arguing that the Principals individually, rather than the Debtor, owned the intellectual property requested to be transferred and, therefore, the automatic stay was not applicable. *Id.*

On April 8, 2016, Mr. Smiley filed a motion in the state court action seeking to compel the Principals to execute in favor of Mr. Smiley, as receiver, assignments of the relevant

intellectual property. Pl's Exh. 23. In his Amended Response and at the hearings, Mr. Smiley stated that he intended only to inform the state court of the improper actions of the Principals, individually, and not to seek relief against the Debtor. ECF No. 133. Mr. Smiley admits that "although the first page and half of [his motion to compel] mistakenly appears to include the Debtor in what Receiver refered [sic] to as 'Defendants,' the remainder of the [motion to compel] makes clear that it is only the [Principals], individually, Receiver was referring to." *Id.*

On April 12, 2016, the Debtor filed the present Motion, which initially came before this Court for non-evidentiary hearing on April 28, 2016. The parties agreed that a single day evidentiary hearing was required, and so the Court set the matter for evidentiary hearing on July 25, 2016. Because the parties had not completed their presentations, the Court held subsequent evidentiary hearings on August 5, 2016 and September 2, 2016.

The Debtor claims that all intellectual property addressed in the Receivership Order, meaning all intellectual property at issue here, is and has for some time been its property, is property of its bankruptcy estate, and is protected by the automatic stay. The evidence before this Court supports that conclusion. Indeed, there is no credible evidence to the contrary.

The Debtor presented the 2004 Assignment, and the testimony of Justin Daya, in support of their contention that the intellectual property is property of the estate. In relevant part, the 2004 Assignment states:

> [The Principals] hereby grant to [the Debtor] full right, use of, and ownership of any and all intellectual property . . . owned, developed, or to be developed by [the Principals], upon the occurrence of any of the following conditions: (1) The intellectual property becomes integral or necessary to the business operations of [the Debtor]; or (2) [The Debtor] in anyway facilitates the development of the intellectual property . . . .

*Id.* Justin Daya testified that all intellectual property at issue here is "integral or necessary to the business of [the Debtor]." Indeed, Mr. Daya testified that the intellectual property is

the only valuable asset available to the Debtor, that the Debtor's business is organized around the intellectual property, and that the Debtor is actively pursuing contracts for the licensing and marketing of that intellectual property for the benefit of the estate.  Mr. Daya's testimony also supports the conclusion that the Debtor facilitated the development of the intellectual property, that it was in fact developed for the Debtor.  The conditions for effectiveness of the 2004 Assignment were met long prior to the filing of this case.  As of the petition date, the Debtor was (and remains) the sole owner of all the subject intellectual property.

Mr. Stanco suggested that the 2004 Assignment was fabricated at some time after its date, potentially in connection with this case.  There is no evidence to support this allegation.

The Debtor's allegations with regard to Mr. Stanco are limited.  As conceded during closing argument, the Debtor pointed only to Mr. Stanco's August 23, 2015 email to the Principals and Mr. Stanco's participation on March 9, 2016 in email communications with regard to the effect of the automatic stay in this case.  On the first of these dates, there is no evidence that Mr. Stanco knew of the Debtor's bankruptcy case and thus there can be no willful violation of the stay under prevailing law.  Mr. Stanco's participation in the subsequent email conversation on March 9, 2016 amounts to a discussion among the parties with regard to the legal impact of the automatic stay in this case.  To find that such email communication was a violation of the automatic stay would be tantamount to ruling that no creditor may negotiate with a debtor with regard to the extent of the automatic stay without the discussion itself being a violation of the stay.  Based on the evidence admitted, Mr. Stanco did not willfully violate the automatic stay in this case.  Similarly, the Debtor alleged no independent actions by Mr. Stanco's clients, Dana Klein and DKMC, Inc., and so no relief may be accorded against them.

In the Motion and at the hearings, the Debtor alleged that Mr. Smiley violated the automatic stay by sending emails and a certified letter, with forms of assignment to be executed by the Principals and also by the Debtor, by threatening to file a motion for contempt in the state court case, and by actually filing a motion for contempt in the state court, all in an attempt to obtain control over certain intellectual property owned by the Debtor, during and with knowledge of the pendency of the Debtor's bankruptcy case.

The Debtor argues that any attempt to obtain assignment of the intellectual property from the Debtor itself was an obvious violation of the automatic stay.  In his Amended Response and at the September 2, 2016 hearing, Mr. Smiley stated that he did not intend to include with his February 8, 2016 certified letter to the Principals a copy of an assignment with a signature block for the Debtor, but that his assistant had mistakenly included that document when the packet was sent to the Principals. ECF No. 133.  Mr. Smiley contends that, after he obtained knowledge of this bankruptcy case, he did not intend to seek formal assignment from the Debtor, but only from the Principals individually.  Mr. Smiley contends that he filed the motion to compel with the state court because the Principals failed to assign whatever ownership interest in the relevant intellectual property they might have, as he believed was required by the Receivership Order.  Mr. Smiley states that he did not intend to include the Debtor in his motion to compel filed with the state court, and that the use of the term "Defendants" in the first two pages of that motion is limited by the remaining text of the motion which focuses on the Principals.[3]

The un-rebutted evidence, which the Court finds credible, supports the conclusion that once he had knowledge of the Debtor's bankruptcy Mr. Smiley did not attempt to obtain an

---

[3] Mr. Smiley addressed each of the foregoing issues during closing argument rather than while testifying under oath.  However, as these statements were not objected to by the Debtor, and are supported by the other evidence in this case, the Court considers them here.

assignment of the intellectual property directly from the Debtor nor did he intend to ask the state court to hold the Debtor in contempt. There is no evidence that Mr. Smiley took any direct action against the Debtor itself that constituted a willful violation of the stay.

On the other hand, Mr. Smiley repeatedly tried to obtain assignments of the intellectual property from the Principals, during and with knowledge of this bankruptcy case, after it had been made clear to Mr. Smiley that the Debtor claimed it was the sole owner of that property. Based on the un-rebutted evidence before the Court, the dispute with regard to the Debtor's ownership of its intellectual property, coupled with Mr. Smiley's multiple attempts to obtain assignments of these assets from the Principals, hampered the Debtor's efforts to enter into agreements necessary for the Debtor to realize the value of the intellectual property for the benefit of its reorganization.[4] In any case, assignments of the intellectual property owned by the Debtor but executed by the Debtor's Principals obviously would cloud the Debtor's interest in the intellectual property, requiring the Debtor to obtain appropriate legal relief to ensure its ability to do business with its own assets. Accordingly, Mr. Smiley's attempts to interfere with the Debtor's intellectual property constitute willful violations of the automatic stay in this case.

Mr. Smiley relies heavily on the language in the Receivership Order stating "the Receiver will have the power and duty to take custody and possession of the assets of [the Principals and the Debtor]" to support his view that it was permissible for him to seek assignments from the Principals. However, once Mr. Smiley was put on notice of the bankruptcy filing here, and the Debtor's claim that it owned all of the intellectual property,

---

[4] The Debtor need not prove that it suffered actual monetary damages as a result of Mr. Smiley's actions to meet its burden in showing there was a willful violation of the automatic stay. The question of what sanctions should be ordered, including whether sanctions should include actual damages, is separate from the question of whether there was a willful violation of the stay in the first instance. A discussion regarding sanctions follows below.

he was under a duty to seek permission from this Court before taking any action with regard to the intellectual property. *In re Lile*, 103 B.R. at 837 ("Once a party is put on notice of a bankruptcy filing, he is under a duty to seek further information which should reveal the applicability and scope of the automatic stay."); *In re Lickman*, 297 B.R. at 192-93 (finding that "the defendants had an affirmative obligation to seek clarification from the bankruptcy court as to the scope of the automatic stay before proceeding with any of the actions that they took outside the bankruptcy court.").

Having concluded that Mr. Smiley willfully violated the automatic stay, the Court must determine the appropriate sanction, if any. Although Mr. Smiley's actions hampered the Debtor's negotiation of agreements necessary for the Debtor to realize the value of its intellectual property in this reorganization case, in the end they were not the actual cause of the delay in the Debtor's ability to finalize those agreements. This Court's determination to delay consideration of the Debtor's proposed licensing arrangement to the confirmation hearing is the real cause for the Debtor's present inability to finalize and implement its proposed business plan. However, the Debtor has suffered damages in the form of legal fees and expenses incurred in connection with responding to Mr. Smiley's improper attempts to obtain control over the intellectual property, including work done prior to the filing of the Motion, the preparation of and filing of the Motion, and representation of the Debtor at the hearings on the Motion.

At this Court's request, on September 16, 2016, Mr. Moccia, counsel for the Debtor, filed an *Affidavit of Attorney's Fees and Costs in Connection with Debtor's Emergency Motion for Violation of Automatic Stay and Creditor Misconduct Against DKMC, Inc., Dana Klein, Eric Stanco, Esq. and Scott D. Smiley, Esq [ECF No. 87]* [ECF No. 136]. Mr. Moccia undertook 45.2 hours of legal work in connection with responding to Mr. Smiley's attempts to obtain control over the intellectual property, the preparation and filing of the Motion, and

representation of the Debtor at the hearings thereon.  At an hourly rate of $275.00, this equates to $12,430.00 in attorney's fees.  Mr. Moccia also incurred related expenses in the amount of $140.20.  The Court finds that Mr. Moccia's hourly rate is reasonable in light of his experience, skill and reputation; indeed, the rate Mr. Moccia is charging in this case is modest.  Mr. Moccia's time entries indicate appropriate work in connection with this matter and the time he spent, and the expenses for which he seeks reimbursement, were reasonable under the circumstances of the case.  Accordingly, Mr. Moccia's compensable fees and expenses total $12,570.20.

In addition, Jeff Lloyd, Esq., special counsel to the Debtor, prepared to testify and testified in connection with the Motion.  Mr. Lloyd traveled from Gainesville, Florida to West Palm Beach, Florida to do so.  Mr. Lloyd spent a total of 3.9 hours preparing for and testifying before this Court, at an hourly rate of $500.00, for a total of $1,950.00.  Based on Mr. Lloyd's skill and experience, the Court finds Mr. Lloyd's hourly rate to be reasonable.  Mr. Lloyd's time entries for legal work in this matter indicate appropriate work and the time he spent was reasonable under the circumstances of the case.  Mr. Lloyd also spent 8.7 hours traveling to and from the courthouse for his testimony.  Mr. Lloyd assigned an hourly rate of $450.00 for that time.  The Court deems it appropriate for Mr. Lloyd to charge half his regular hourly rate, or $250.00, for travel time necessitated by the Debtor during which he was not otherwise performing billable legal work.  A reasonable fee for Mr. Lloyd's travel time is $2,175.00.  Mr. Lloyd also incurred reasonable travel costs in the amount of $946.62.  Accordingly, Mr. Lloyd's compensable fees and expenses total $5,071.62.

Having found that all of the subject intellectual property is, and for some time has been, property of the Debtor, and not property of the Principals, and in furtherance of the automatic stay in this case, the Court will direct all parties in interest, including without limitation Messrs. Stanco and Smiley and those acting with or through them, not to attempt

to obtain control over any of the subject intellectual property by any means unless the automatic stay in this case is terminated under applicable law or otherwise ordered by this Court.

## ORDER

For the foregoing reasons, the Court hereby ORDERS and ADJUDGES:

1. The Motion [ECF No. 87] is GRANTED IN PART to the extent provided herein.

2. Absent termination of the automatic stay in this case pursuant to applicable law or separate order of this Court, no person or entity, including without limitation Eric Stanco, Esq. or Scott D. Smiley, Esq. or anyone acting with or through them, shall attempt to obtain assignment of or otherwise obtain control over any United States or foreign patents, patent applications, or similar rights, claimed to be owned by the Debtor, Daya Medicals, Inc., in this case.

3. As sanctions for willful violation of the automatic stay in this case, within fourteen (14) days after entry of this Order, Scott D. Smiley, Esq. shall pay (a) to The Law Office of Michael D. Moccia, P.A. the sum of $12,570.20, and (b) to Saliwanchik, Lloyd & Eisenschenk, a Professional Association, the sum of $5,071.62.  To the extent counsel or special counsel to the Debtor have previously received part of such amounts from the Debtor, the excess shall be credited to the Debtor.

4. Mr. Smiley's request for an award of fees and costs is DENIED.

5. All monetary relief requested against Mr. Stanco and Mr. Stanco's clients, Dana Klein and DKMC, Inc., is DENIED.

### ###

Copies furnished to:

Michael D. Moccia, Esq.

*Michael D. Moccia, Esq. is directed to serve a conformed copy of this Order on all creditors and file a certificate of service with the Court.*