**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

In re:                                                                                          Case No. 15-24931-EPK
                                                                                                 Chapter 11
DAYA MEDICALS, INC.,

      Debtor.
_____/

### DEBTOR'S AMENDED MOTION TO APPROVE CONFIRMATORY LICENSE AGREEMENT AND TO ASSUME EXECUTORY CONTRACT

      DAYA MEDICALS, INC., as debtor and debtor-in-possession in the above-captioned case (the "Debtor") hereby moves the Court (the "Motion") for entry of an order approving the Confirmatory License Agreement attached hereto and approving the assumption of said agreement and in support of the Motion, the Debtor respectfully represents:

      1.      The Debtor is a biomedical company that engages in research and development of new medical products, services, and other medical-related intellectual property. The Debtor currently licenses its intellectual property to a licensee under an oral licensing agreement.

      2.      The oral licensing agreement is currently the only source of future revenue for the Debtor and such oral licensing agreement is necessary for the Debtor's successful reorganization.

      3.      The Debtor wishes to reduce the oral licensing agreement to writing to dispel any confusion or controversy regarding said oral agreement.

      4.      Attached hereto is the proposed Confirmatory License Agreement for which the Debtor is seeking Court approval to execute.

      5.      This written Confirmatory License Agreement provides for a royalty of 3% of gross sales and also provides a loan facility to the Debtor to obtain funding if there is a shortfall in

1

revenues to pay Plan payments.

6. Pursuant to 11 U.S.C. §365, the Debtor seeks to assume the licensing agreement and also seeks Court approval to execute the attached Confirmatory License Agreement which reduces the existing oral licensing agreement to writing.

7. Approving the written agreement and approving assumption of the agreement is necessary for the Debtor's successful reorganization. It is highly unlikely that unsecured creditors will receive any distribution if this case is converted or dismissed; therefore, approval of the written agreement and approval of assumption of the agreement to allow reorganization is in the best interests of creditors, the Debtor, and the estate.

WHEREFORE, the Debtor respectfully requests that the Court enter an order approving the attached Confirmatory Licensing Agreement, approving the assumption of the licensing agreement, and for any further relief that the Court deems just and proper.

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualification to practice in this Court set forth in Local Rule 2090-1(A).

>LAW OFFICE OF
>MICHAEL D. MOCCIA, P.A.
>Counsel for the Debtor
>1200 North Federal Highway, Suite 200
>Boca Raton, Florida 33432
>Telephone: (561) 210-8510
>Facsimile: (561) 210-8509
>Email: mdm@moccialaw.com
>
>By:    ___s/ Michael D. Moccia_____
>          Michael D. Moccia
>          Florida Bar No.: 44658

## **CONFIRMATORY LICENSE AGREEMENT**

This Confirmatory License Agreement ("Agreement") is entered into on the ___ day of January, 2017, by and between Daya Medicals, Inc., a Florida corporation with a principal place of business of 5139 Pointe Alexis Drive, Boca Raton, Florida, 33486 (hereafter "Licensor") and Daya Medicals, Inc. (f/k/a 2407216 Ontario, Inc.), an Ontario, Canada corporation with a principal place of business of 295 Hagey Blvd, Waterloo, Ontario N2L 6R5 (hereafter "Licensee") (the Licensor and Licensee may be collectively referred to as the "Parties").

WHEREAS, Licensor owns the intellectual property attached to this Agreement as Exhibit A (hereafter the "IP");

WHEREAS, Licensor licensed and is licensing the IP to Licensee under an oral licensing agreement which commenced on February 14, 2014 with a royalty rate of 1% of gross sales to be paid from Licensee to Licensor for a term of one (1) year that automatically renews for additional one (1) year terms if no intent to terminate is communicated from either Party;

WHEREAS, no intent to terminate has ever been communicated by either Party and both Parties have performed under the oral licensing agreement so the oral licensing agreement has been renewed for two (2) additional one (1) year terms with the most recent term commencing on February 14, 2016;

WHEREAS, Licensor and Licensee wish to increase the royalty rate to 3% of gross sales; and

WHEREAS, to provide clarity, the Licensor and Licensee desire to reduce their oral licensing agreement to writing.

NOW THEREFORE, for and in consideration of the above recitals, the mutual promises, covenants, and undertakings set forth below, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Parties agree as follows:

1. **Oral Agreement**. This Agreement is not intended to supersede the oral licensing agreement described in the recitals to this Agreement and instead is intended to confirm and clarify the terms of the oral licensing agreement with some limited amendments as described in the last sentence of this paragraph. However, to the extent that such oral licensing agreement or a portion thereof is held to be invalid, then the terms of this written Agreement shall supersede the invalidated portions of the oral licensing agreement. The only new terms in this Agreement are the terms in the Optional Loan Facility in Section 9 of this Agreement as well as increasing the royalty rate to 3% of gross sales.

2. **Definitions**. In addition to the terms that have already been defined in this Agreement, the following additional definitions shall apply:

    a. "Licensed Patent Rights" shall mean:

      i. All items listed in Exhibit A.
      ii. Any and all improvements developed by Licensor, whether patentable or not, relating to the Licensed Patent Rights, which Licensor may now or may hereafter develop, own or control.
      iii. Any or all patents and trademarks, which may issue on patent rights and improvements thereof, developed by Licensor and any and all divisions, continuations, continuations-in-part, reissues and extensions of such patents.
      iv. Any and all web domains associated with the items listed in Exhibit A.

b. "Product(s)" shall mean any materials including techniques, devices, methods or inventions relating to or based on the Licensed Patent Rights, developed since the oral licensing agreement was entered into or in the future.

c. "Confidential Proprietary Information" shall mean with respect to any Party all scientific, business or financial information relating to such Party, its subsidiaries or affiliates or their respective businesses, except when such information:
      i. Becomes known to the other Party prior to receipt from such first Party;
      ii. Becomes publicly known through sources other than such first Party;
      iii. Is lawfully received by such other Party from a party other than the first Party; or
      iv. Is approved for release by written authorization from such first Party.

d. "Exclusive License" shall mean a license, including the right to sublicense, whereby Licensee's rights are sole and entire and operate to exclude all others, including Licensor and its affiliates except as otherwise expressly provided herein.

e. "Know-how" shall mean any and all technical data, information, materials, trade secrets, technology, formulas, processes, and ideas, including any improvements thereto, in any form in which the foregoing may exist, now owned or co-owned by or exclusively, semi-exclusively or non-exclusively licensed to any party prior to the date of this Agreement or hereafter acquired by any party during the term of this agreement.

f. "Intellectual Property Rights" shall mean any and all inventions, materials, Know-how, trade secrets, technology, formulas, processes, ideas or other discoveries conceived or reduced to practices, whether patentable or not.

3.      **Grant of Exclusive License**.  Licensor hereby grants to Licensee the exclusive worldwide license with the right to sublicense others, to make, have made, use, sell and lease the Products described in the Licensed Patent Rights.

4.      **License Payments**.  For the license herein granted, Licensee shall pay an earned royalty of three percent (3%) of Licensee's Gross Sales of Products.  Such royalty shall be paid quarterly with payments on February 15, May 15, August 15, and November 15 of each year.  In the event Licensee sublicenses the Products, Licensee shall pay a quarterly royalty on the same dates as the preceding sentence of three percent (3%) of Gross Sales or Gross Income from each leased Product.  The granting and terms of all sublicenses is entirely at Licensee's discretion provided that all sublicenses shall be subjected to the terms and conditions of this Agreement.  A sale shall be regarded as being made upon payment for Products made using Licensed Patent Rights.  All sums payable by Licensee hereunder shall be paid to Licensor at its principal place of business in the currency of US Dollars.

5.      **Reports, Books, and Records**.

   a. **Reports**.  At the time of payment of the royalties under Section 4, Licensee shall make a written report to Licensor setting forth the Gross Sales of Licensed Patent Rights sold, leased or used by Licensee and total sublicensing receipts during the previous three (3) months.  If there are no Gross Sales or sublicensing receipts, no statement is required by Licensee to Licensor.  At the time each report is made, Licensee shall pay to Licensor the royalties or other payments shown by such report to the payable hereunder.

   b. **Books and Records**.  Licensee shall keep books and records in such reasonable detail as will permit the reports provided for in Paragraph 5.a. hereof to be determined.  Licensee further agrees to permit such books and reports to be inspected and audited by a representative or representatives of Licensor to the extent necessary to verify the reports provided for in paragraph 5.a. hereof; provided, however, that such representative or representatives shall indicate to Licensor only whether the reports and royalty paid are correct, if not, the reasons why not.

6.      **Diligence**.  Licensee shall use its best efforts to bring Licensed Patent Rights to market through a thorough, vigorous and diligent program and to continue active, diligent marketing efforts throughout the life of this Agreement.

7.      **Irrevocable Judgment with Respect to Validity of Patents**.  If a judgment or decree shall be entered in any proceeding in which the validity or infringement of any claim of any patent under which the License is granted hereunder shall be in issue, which judgment or decree shall become not further reviewable though the exhaustion of all permissible applications for rehearing or review by a superior tribunal, or through the expiration of the time permitted for such application, (such a judgment or decree being hereinafter referred to as an irrevocable judgment) the construction placed on any such claim by such irrevocable judgment shall

thereafter be followed not only as to such claim, but also as to all claims to which such instruction applies, with respect to acts occurring thereafter and if an irrevocable judgment shall hold any claim invalid, Licensee shall be relieved thereafter from including in its reports hereunder that portion of the royalties due under Section 4 payable only because of such claim or any broader claim to which such irrevocable judgment shall be applicable, and from the performance of any other acts required by this agreement only because of any such claims.

8. **Termination**.  This Agreement shall continue the oral licensing agreement's term of one (1) year terms that are automatically renewed if no notice of termination is tendered.  The next renewal date is February 14, 2017.  Either Party may terminate this Agreement by providing at least thirty (30) days written notice prior to the expiration of the term.  If written notice is not received at least thirty (30) days prior to the expiration of the term, then this Agreement shall automatically renew for an additional one (1) year.  Termination of this Agreement shall not relieve the Licensee from the obligation to pay royalties that are earned by the Licensor.

9. **Optional Loan Facility**.  At the Licensee's option, the Licensee may loan the Licensor funds if the Licensor is in need of additional funds.  These loans from Licensee to Licensor shall be made at the lowest allowable interest rate set by the Internal Revenue Service.  Repayment of loans made under this Section may be made by deducting the repayment amounts from royalty payments made hereunder so long as such deductions would not cause a shortfall in the amount needed to pay the Licensor's necessary operating expenses.  Additional terms of these loans may be agreed to by the Parties prior to the loan being made.

10. **Patent Filings and Prosecuting**.  Licensor shall pay future costs of the prosecution of the patent applications pending that are listed in Exhibit A which are reasonably necessary to obtain the patent.  Preparation and maintenance of patent applications and patents undertaken at Licensor's cost shall be performed by patent attorneys selected by Licensor.

11. **Notices and Assignment**.  Notices and payments required hereunder shall be deemed properly given if duly sent by first class mail and addressed to the parties at the addresses set forth above.  The parties hereto will keep each other advised of address changes.  This Agreement is not assignable, by operation of law or otherwise, without the prior written consent of both Licensee and Licensor.

12. **Miscellaneous**.

    a. This Agreement is constructed and shall be construed in accordance with the laws of the State of Florida.

    b. The parties agree to maintain discussions and proprietary information revealed pursuant to this agreement in confidence, to disclose them only to persons within their respective organizations having a need to know, and to furnish assurances to the other party that such persons understand this duty on confidentiality.

c. Licensed Patent Rights are provided WITHOUT WARRANTY OR REPRESENTATIONS OF ANY SORT, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE OF NON-INFRINGEMENT. Licensor makes no representations and provides no warranty that the use of the Licensed Patent Rights will not infringe any patent or proprietary rights of third parties.

d. This Agreement may be modified or amended only by a writing signed by both Parties.

e. This Agreement is intended for the benefit of the Parties hereto and is not for the benefit of, nor may any provision hereof be enforced by, any other person or entity.

IN WITNESS WHEREOF, the Parties have signed this Agreement as of the date written below.

Dated:_____    _____
Dr. Kantilal Daya
Chief Medical Officer
Daya Medicals, Inc. (USA), Licensor

Dated:_____    _____
Justin Daya
Chief Executive Officer
Daya Medicals, Inc. (Canada), Licensee